## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.:  1:25-cv-01478-SKC-STV

UNITED FOOD AND COMMERCIAL
WORKERS LOCAL 1776 AND
PARTICIPATING EMPLOYERS HEALTH
AND WELFARE FUND; A.F. OF L. –
A.G.C. BUILDING TRADES WELFARE
PLAN, on behalf of themselves and all
others similarly situated,

         Plaintiffs,

v.

DAVITA INC.; FRESENIUS MEDICAL
CARE AG; FRESENIUS MEDICAL CARE
HOLDINGS, INC. d/b/a FRESENIUS
MEDICAL CARE NORTH AMERICA; and
FRESENIUS USA MANUFACTURING,
INC. d/b/a FRESENIUS MEDICAL CARE
NORTH AMERICA,

         Defendants.

---

## DAVITA INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)

## CERTIFICATE OF CONFERRAL PURSUANT TO
## D. COLO. L. CIV. R. 7.1(a)

DaVita Inc. conferred with Plaintiffs regarding this Motion to Dismiss the Amended Complaint in an email on October 8, 2025, stating the grounds for the dismissal. Plaintiffs responded with their position that the Amended Complaint includes specific allegations that plausibly suggest a conspiracy that violates antitrust laws.

## CERTIFICATE REGARDING USE OF GENERATIVE ARTIFICIAL
## INTELLIGENCE

Pursuant to Judge K. Crews' Standing Order for Civil Cases, Section C.2, no portion of this Motion was drafted by artificial intelligence.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS ...................................................... 2

LEGAL STANDARD................................................................................................. 2

ARGUMENT .............................................................................................................. 3

I.     Plaintiffs Do Not Allege Any Direct Evidence of a Conspiracy ......................... 3

II.    Plaintiffs Do Not Allege Any Plausible Circumstantial Evidence of a
       Conspiracy ........................................................................................................... 3

       A.     Plaintiffs' bare and conclusory assertions are insufficient to
              plausibly allege parallel conduct. ............................................................. 4

       B.     Plaintiffs' "kitchen-sink" allegations are insufficient to suggest
              that any purported parallel conduct resulted from an agreement ......... 8

              1.     The Pleaded Conduct Is Not Against Self-Interest ...................... 8

              2.     Market Characteristics, "Motive" for Profit, and
                     "Opportunity" for Contact are Insufficient ............................... 11

              3.     Government Investigations and Unrelated Settlements Are
                     Not "Plus Factors" ..................................................................... 12

III.   Plaintiffs' Claim Is Time-Barred .................................................................... 12

       A.     Plaintiffs' allegations establish that any claim accrued more than
              four years prior to the filing of the complaint. ..................................... 13

       B.     Plaintiffs fail to sufficiently plead fraudulent concealment. ................ 13

CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Abbott Lab'ys v. Adelphia Supply USA*,
    2017 WL 5992355 (E.D.N.Y. Aug. 10, 2017) ........................................................ 8

*Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical
    Assisting*,
    127 F.4th 178 (10th Cir. 2025)..........................................................*passim*

*Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apts., LLC*,
    843 F.3d 1225 (10th Cir. 2016) ................................................................ 13

*Ballen v. Prudential Bache Secs., Inc.*,
    23 F.3d 335 (10th Cir. 1994) .................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................*passim*

*Brown v. JBS USA Food Co.*,
    773 F. Supp. 3d 1193 (D. Colo. 2025)........................................... 13, 14, 15

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
    92 F.4th 381 (2d Cir. 2024) ..................................................................... 3

*In re Concrete & Cement Additives Antitrust Litig.*,
    2025 WL 1755193 (S.D.N.Y. June 25, 2025) ................................ 5, 8, 12

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    801 F.3d 758 (7th Cir. 2015) .................................................................. 12

*Erie Cnty., Ohio v. Morton Salt, Inc.*,
    702 F.3d 860 (6th Cir. 2012) .............................................................. 9, 11

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-
    Day Saints*,
    148 F.4th 1202 (10th Cir. 2025).............................................................. 4

*GF Gaming Corp. v. City of Black Hawk, Colo.*,
    405 F.3d 876 (10th Cir. 2005) ............................................................... 11

*Hansen v. Harper Excavating, Inc.*,
    641 F.3d 1216 (10th Cir. 2011) ............................................................... 7

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009) .................................................................. 12

*Indus. Constructors Corp. v. U.S. Bureau of Reclamation*,
15 F.3d 963 (10th Cir. 1994) .............................................................................. 15

*Int'l Distrib. Centers, Inc. v. Walsh Trucking Co.*,
812 F.2d 786 (2d Cir. 1987)................................................................................ 12

*King & King Enterprises v. Champlin Petroleum Co.*,
657 F.2d 1147 (10th Cir. 1981) .......................................................................... 14

*Kleen Prods. LLC v. Int'l Paper*,
276 F. Supp. 3d 811 (N.D. Ill. 2017) .................................................................. 12

*Koch v. Koch Indus., Inc.*,
203 F.3d 1202 (10th Cir. 2000) .......................................................................... 14

*Llacua v. W. Range Ass'n*,
2016 WL 9735747 (D. Colo. June 3, 2016), *report and
recommendation adopted in relevant part*, 2016 WL 9735748 (D.
Colo. Sept. 6, 2016 .............................................................................................. 11

*Llacua v. W. Range Ass'n*,
930 F.3d 1161 (10th Cir. 2019) ..................................................................*passim*

*MacDermid Printing Sols. LLC v. Cortron Corp.*,
833 F.3d 172 (2d Cir. 2016)................................................................................ 11

*Mao, Inc. v. Penn Ent., Inc.*,
2025 WL 1993702 (D. Colo. July 17, 2025) ........................................................ 6

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023)............................................................................. 6

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ............................................................................ 10

*Nat'l Ass'n of Invs. Corp. v. Bivio, Inc.*,
2013 WL 316021 (D. Colo. Jan. 28, 2013).......................................................... 15

*Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank
Aktiengesellschaft*,
2024 WL 4202680 (S.D.N.Y. Sept. 13, 2024).................................................... 4, 5

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
    767 F. Supp. 3d 681 (N.D. Ohio 2025) ..................................................... 12

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ......................................................... 2, 3

*Sierra Club v. Okla. Gas & Elec. Co.*,
    816 F.3d 666 (10th Cir. 2016) ............................................................ 13

*Snyder v. ACORD Corp.*,
    2016 WL 192270 (D. Colo. Jan. 15, 2016)..................................... 11, 12

*United States v. Syufy Enters.*,
    903 F.2d 659 (9th Cir. 1990) ............................................................... 9

*In re Urethane Antitrust Litig.*,
    409 F. Supp. 2d 1275 (D. Kan. 2006) ................................................ 13

*In re Urethane Antitrust Litig.*,
    913 F. Supp. 2d 1145 (D. Kan. 2012) ................................................ 14

**Statutes**

15 U.S.C. § 15b................................................................................................. 12

15 U.S.C. § 1 ....................................................................................... 1, 2, 12, 13

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................... 13, 14

Fed. R. Civ. P. 12(b)(6)................................................................................... 1

Fed. R. Evid. 201(d) ....................................................................................... 7

Defendant DaVita Inc. ("DaVita") hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint ("AC") (Dkt. 52).

## PRELIMINARY STATEMENT

Despite two attempts, Plaintiffs fail to allege any plausible agreement between Fresenius Medical Care Holdings, Inc., and Fresenius USA Manufacturing, Inc. (together, "FMC") and DaVita to do anything unlawful—a necessary predicate for a Section 1 claim. Instead, Plaintiffs try to stitch together an inference of a "decades-long," nationwide antitrust conspiracy to fix prices and allocate territories for outpatient dialysis services based on conclusory statements, nationwide average pricing data in the industry, and unrelated business conduct. Far from alleging an antitrust conspiracy, Plaintiffs identify no parallel conduct suggesting an agreement at all. In this regard, while Plaintiffs assert that Defendants entered a price-fixing conspiracy, they cite no specific price charged by either Defendant—ever. And despite claiming that FMC and DaVita avoid competing in undefined "areas," Plaintiffs' allegations make clear that DaVita and FMC compete extensively. Moreover, the conduct Plaintiffs rely upon to buttress their assertion of a conspiracy is in fact entirely consistent with competition and DaVita's own unilateral commercial interests. This is all fatal to Plaintiffs' Section 1 claim. Finally, even if Plaintiffs had plausibly alleged an unlawful agreement (they have not), Plaintiffs rely extensively on conduct that predates the putative Class Period by years or even decades and, thus, their claim is time-barred.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS[1]

FMC and DaVita are dialysis providers in the US. AC ¶ 1. United Food and Commercial Workers Local 1776 and Participating Employers Health and Welfare Fund ("UFCW 1776") "directly" pays DaVita for dialysis services. *Id*. ¶ 41.[2] Plaintiffs claim that FMC and DaVita agreed to fix prices and allocate "less densely populated areas" for outpatient dialysis services across the US in violation of Section 1 of the Sherman Act. *Id*. ¶¶ 14, 336–37. They seek to represent a nationwide class of anyone who purchased such services directly from a Defendant or its affiliate "in no case later than four years from prior [sic] to May 9, 2025." *Id*. ¶¶ 320, 322.

## LEGAL STANDARD

Plaintiffs bring a single *per se* claim under Section 1 of the Sherman Act, which prohibits agreements that unreasonably restrain trade. 15 U.S.C. § 1; AC ¶ 337. To avoid dismissal, the AC must contain "allegations plausibly suggesting (not merely consistent with) agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Facts showing such an agreement can be direct or circumstantial," but a conclusory allegation of agreement "at some unidentified point" will not suffice. *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 190 (10th Cir. 2025) ("*Surgical Assistants*"). Antitrust conspiracy claims fail where the

---

[1] For purposes of this motion only, DaVita assumes as true the non-conclusory factual allegations in the AC. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).
[2] A.F. of L. – A.G.C. Building Trades Welfare Plan does not allege that it paid DaVita for outpatient dialysis services. *See* AC ¶ 43.

conduct "is equally likely to result from independent action." *Id.* at 191.

**ARGUMENT**

Plaintiffs fail to allege direct or circumstantial facts plausibly establishing an agreement between FMC and DaVita to fix prices or allocate territories. Where, as here, the allegations "encompass a wide swath of conduct, much of it innocent," Plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247. In any event, Plaintiffs' claim is time-barred.

## I.    Plaintiffs Do Not Allege Any Direct Evidence of a Conspiracy

Direct facts "are explicit and require no inferences" to establish the conclusion being asserted. *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1174 n.24 (10th Cir. 2019). Plaintiffs plead no facts explicitly establishing an agreement between FMC and DaVita to fix prices or allocate geographic areas. Plaintiffs' reference to an undated remark by an unidentified former FMC employee about a "gentleman's agreement" between DaVita and FMC "not [to] step on each other's toes" with no context, AC ¶ 14, "is far from the sort of smoking gun that courts look for when assessing direct evidence of an agreement." *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 396 (2d Cir. 2024); *see Llacua*, 930 F.3d at 1178–79 (no direct evidence absent explicit agreement "as to any of the three supposed conspiracies").

## II.    Plaintiffs Do Not Allege Any Plausible Circumstantial Evidence of a Conspiracy

To state a conspiracy claim through circumstantial evidence, Plaintiffs must plead i) specific facts indicating that FMC and DaVita acted in parallel and ii)

additional facts (*i.e.*, "plus factors") that suggest the alleged parallel conduct was the result of an agreement rather than independent conduct. *Twombly*, 550 U.S. at 557.

### A.    Plaintiffs' bare and conclusory assertions are insufficient to plausibly allege parallel conduct.

Plaintiffs' conclusory assumption that "Defendants' prices for private insurance have *likely* moved in parallel" across the US during the Class Period, AC ¶ 319 (emphasis added), lacks supporting factual allegations. *See Llacua*, 930 F.3d at 1177. Plaintiffs rely on a study of private-pay data for "the top five 'large' dialysis chains" allegedly reflecting an increase in nationwide average prices over an 8-year period that predates the Class Period to speculate about the "pricing behavior" of FMC and DaVita. AC ¶¶ 91–94. But neither the study nor the AC says anything about specific prices *during the Class Period*, let alone DaVita's prices in any specific market. Instead, Plaintiffs speculate that, because *nationwide average* prices increased across Defendant and non-defendant dialysis chains, FMC and DaVita must have sustained "nearly identical prices" in each US market in which they operate during the Class Period. *Id.* ¶¶ 101, 103. The Court "need not accept as true [such] unwarranted inferen[tial leaps]." *See Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025). Multi-year pricing averages in the industry cannot reveal alleged parallel pricing among Defendants. *See Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*, 2024 WL 4202680, at *7 (S.D.N.Y. Sept. 13, 2024) ("aggregate statistics do not alone suffice to impute wrongful conduct").

In fact, despite UFCW 1776 claiming to pay DaVita directly for dialysis services, Plaintiffs allege no prices charged or paid, in any geographies, at any times, nor do they identify when any parallel price changes occurred. *See id. (*without "individualized allegations of any specific [prices]," plaintiffs fail to "articulate a link between the allegations and the specific defendants"). Instead, Plaintiffs plead that Defendants' clinics "in the Philadelphia area" charged UFCW 1776 "prices" with differences "as low as" $1, $3, or $4 per treatment in 2020, 2021, 2023, and 2024, and that on "information and belief" these price differences were consistent across the US. AC ¶¶ 101, 103. Cherry-picking the smallest price difference in one city, without even alleging when DaVita and FMC charged those prices, does not plead parallel conduct. Indeed, if Defendants charged different prices year-round except for one day, that would not suggest a price-fixing conspiracy in Philadelphia, much less nationwide. *See In re Concrete & Cement Additives Antitrust Litig.*, 2025 WL 1755193, at *14 (S.D.N.Y. June 25, 2025) ("*In re Concrete*") ("[p]rice increases affecting only a subset of the market [do] not parallel increases affecting other subsets").

Plaintiffs' claim that FMC and DaVita divide "geographic territories outside of densely populated metro areas," AC ¶ 6, also lacks any supporting facts. Plaintiffs point to summary statistics from the certificate-of-need ("CON") process in Illinois, Washington, and North Carolina during an unspecified time period, to say that FMC and DaVita "rarely objected to each other's entry" as compared to non-defendant applicants. *Id.* ¶¶ 205–08. But such allegations, at best, show only that FMC and

DaVita applied to enter (and thus, to compete) in markets where the other operated and often did not oppose the other's entry (and thus, did not "ced[e]" such territory to the other), which is insufficient to establish—and, indeed, is wholly inconsistent with—an agreement not to compete.

Moreover, the allegations lack detail and substance to support a nationwide conspiracy. For one, Plaintiffs provide data from just three states out of the "dozen states" that require CONs. *Id.* ¶ 202. Plaintiffs also never explain the import of any particular objection or non-objection, rendering such comparisons meaningless. Plaintiffs do not allege any facts regarding any CON application, including when and where each application was submitted and whether such markets were even heavily populated. Nor do Plaintiffs allege which Defendant objected (or not) to non-defendant applicants, *see Mao, Inc. v. Penn Ent., Inc.*, 2025 WL 1993702, at *4 (D. Colo. July 17, 2025) ("Plaintiff[s] owe[] Defendants and this court clarity"), or that non-defendant applications were sufficiently comparable to Defendant applications, *see Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1158 (10th Cir. 2023) (affirming dismissal where AC failed to "provide a meaningful benchmark"). Meanwhile, Plaintiffs admit that Defendants *do* object to one another—and have lodged *more* objections to each other's entry than to that of non-defendant providers. AC ¶ 206. These allegations do not remotely support Plaintiffs' assertions of parallel conduct between FMC and DaVita. This lack of detail and coherence fatally undermines Plaintiffs' claim. *See Surgical Assistants*, 127 F.4th at 191.

6

Plaintiffs also attach screenshots of 19 undefined, undated, and selectively cropped geographic "areas" (with no common unit of observation) overlaying pin-drops that show where DaVita, FMC, and other dialysis providers operate clinics to suggest that Defendants "routinely ced[e]" territories to each other in "less densely populated areas," *see* AC ¶¶ 5, 14, 145 (Figures 12-20), App'x A. Putting aside that several of these illustrations, which Plaintiffs created based on "publicly available CMS data," *id.* ¶ 145, are inaccurate and thus cannot be credited,[3] and Plaintiffs' concession that FMC and DaVita do compete in 674 (undefined) cities, *id.* ¶ 142, Plaintiffs never allege that these cropped maps even represent "less densely populated" markets—*i.e.*, ones Plaintiffs claim Defendants agreed to carve up.

Even if Plaintiffs had alleged parallel conduct between DaVita and FMC (which they have not), such conduct alone—even conscious parallelism—"will not suffice" to plead a conspiracy. *Twombly*, 550 U.S. at 556–57. This is especially true where, as here, FMC and DaVita are alleged to operate in a "highly concentrated" marketplace as "*de facto* duopol[ists]", *e.g.*, AC ¶¶ 139, 285; *Twombly*, 550 U.S. at 553–54 ("conscious parallelism [is] a common reaction of firms in a concentrated market"). In any case, Plaintiffs plead no facts showing that DaVita priced contrary

---

[3] For example, while Plaintiffs suggest that no FMC clinics operate in Southern Oregon (AC at App'x A, at A-8), CMS data confirms that at least one FMC clinic is located there. The Ohio/Pennsylvania illustration has similar errors (*id.* at A-9). The Court may take judicial notice of these discrepancies. Fed. R. Evid. 201(d); *see Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011).

to its interests.[4] *Infra* Section I.B.

**B.    Plaintiffs' "kitchen-sink" allegations are insufficient to suggest that any purported parallel conduct resulted from an agreement.**

Plaintiffs also try to infer an unlawful agreement through a kitchen-sink of lawful and unrelated conduct. But none plausibly show that any alleged pricing similarities or placement of Defendant locations was the result of a "meeting of the minds" by FMC and DaVita to fix prices or allocate territories across the US. *Surgical Assistants*, 127 F.4th at 191 ("Allegations of conspiracy based on circumstantial evidence are not plausible if in light of common economic experience the alleged conduct is equally likely to result from independent action." (*citing Llacua*, 930 F.3d at 1175)). "[A] conspiracy cannot be based only upon disconnected or dissimilar events." *In re Concrete*, 2025 WL 1755193, at *13.

**1.    The Pleaded Conduct Is Not Against Self-Interest**

*First*, Plaintiffs fail plausibly to allege that entry in any city or "area" where DaVita was allegedly absent would have made economic sense. For example, Plaintiffs concede that "some areas are too small to support more than one clinic," AC ¶ 146, but do not plausibly allege that the demand in any area could have supported an additional provider at any time. This alone renders any inference of a

---

[4] It is well-settled that similar pricing does not establish an agreement. *Abbott Lab'ys v. Adelphia Supply USA*, 2017 WL 5992355, at *11 (E.D.N.Y. Aug. 10, 2017) ("[M]erely alleging that a firm should lower prices . . ., without more, cannot be sufficient to serve as a plus factor that raises an inference of collusion.").

market-allocation conspiracy "impermissible." *Llacua*, 930 F.3d at 1179–80. In any event, "nothing in the complaint intimates that the resistance to [compete] was anything more than the natural, unilateral reaction of each [Defendant]." *Twombly*, 550 U.S. at 566. "Firms do not expand without limit and none of them enters every market that an outside observer might regard as profitable, or even a small portion of such markets." *Id.* at 569; *see Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 871 (6th Cir. 2012) (affirming dismissal of market allocation claim because "failure to compete . . . is indicative of no more than a natural and independent desire to avoid a turf war"); *United States v. Syufy Enters.*, 903 F.2d 659, 666 (9th Cir. 1990) ("The antitrust laws do not require that rivals compete in a dead heat").

*Second*, Plaintiffs attempt to recast decades of lawful business dealings as evidence of collusion, including DaVita's "long-standing [since 2013] vendor relationship" with FMC for equipment and purchases of FMC's dialysis drugs since before 2008. AC ¶¶ 171, 187, 191, 193. But Plaintiffs plead the very independent business judgment supporting DaVita's decisions: sourcing equipment from "the largest manufacturer and distributor of dialysis equipment and supplies for outpatient clinics in the U.S.," and continuing drug purchases under a predecessor agreement for "higher rebates." *Id.* ¶¶ 158, 192; *Twombly*, 550 U.S. at 554.[5] Likewise,

---

[5] Plaintiffs also point to the availability of one alternative equipment supplier, but then allege that the alternative supplier's product was not cleared by the FDA until nearly two years after DaVita and FMC had agreed to extend their vendor relationship in 2013. *See* AC ¶¶ 171, 179.

Plaintiffs' conclusory suggestion that for "decades" FMC and DaVita used wholly unrelated transactions and acquisitions as "consideration" for a conspiracy, AC ¶¶ 196–99, 237, does not plausibly lead to the conclusion that Defendants agreed to fix prices or allocate markets. *See Surgical Assistants*, 127 F.4th at 191 ("allegations must be plausible and not merely possible" (cleaned up)).

*Third*, Plaintiffs claim that Defendants "joint[ly] control" the American Kidney Fund ("AKF") and donate to AKF which, in turn, "steer[s] Defendants' patients to private insurance and away from Medicare." AC ¶¶ 26, 217–19. Again, Plaintiffs fail to explain how these allegations relate to an agreement to fix prices and allocate markets. Defendants' "control" rests entirely on speculation about an unidentified AKF trustee who supposedly held unspecified roles at FMC and DaVita. *Id.* ¶ 216. Absent allegations of what such person did or when, "the [AC] contains inadequate basis or support for this conclusory assertion." *Surgical Assistants*, 127 F.4th at 191. DaVita's individual donations to AKF likewise raise no inference of collusion and Plaintiffs reluctantly acknowledge that official federal guidance deems such donations to be lawful. AC ¶ 221. The rest of Plaintiffs' allegations focus on AKF's independent actions without any claim that DaVita directed them, let alone entered an agreement with FMC to do so. *E.g.*, *id.* ¶¶ 224–26; *see In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015) ("heed[ing] similar demands made by a common, important customer do not suggest conspiracy").

*Finally*, claims that FMC and DaVita engaged in unrelated joint lobbying, AC

¶¶ 233–34, are squarely immunized under the *Noerr-Pennington* doctrine. *See GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 884 (10th Cir. 2005).

### 2.    Market Characteristics, "Motive" for Profit, and "Opportunity" for Contact are Insufficient

Mere descriptions of large Defendant market shares, AC ¶¶ 119, 285–96, are insufficient to plead collusion. *See MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 185–86 (2d Cir. 2016) ("[T]he mere fact that a market has few competitors does not transform every action by one of them into an antitrust violation."); *Erie Cnty.*, 702 F.3d at 864–70 ("stable market shares," "high incumbency," and "high prices and profits" are "descriptions of the market, not allegations of anything that the defendants did").[6] Nor can Plaintiffs infer a conspiracy based on an unsurprising desire to "increase profits." *Llacua v. W. Range Ass'n*, 2016 WL 9735747, at *17 (D. Colo. June 3, 2016), *report and recommendation adopted in relevant part*, 2016 WL 9735748 (D. Colo. Sept. 6, 2016). Plaintiffs' claim that FMC and DaVita had "opportunities to collude" through their business dealings, hiring decisions, and trade-associations memberships, AC ¶¶ 237–38, 242, 247, suggests nothing more than legitimate reasons for communications. *See Snyder v. ACORD Corp.*, 2016 WL 192270, at *10 (D. Colo. Jan. 15, 2016) ("mere opportunity to conspire is not enough to plead antitrust liability"), *aff'd*, 684 F. App'x 710 (10th

---

[6] Plaintiffs also point to DaVita's financial disclosures "since at least 2010" that purportedly "enable[] calculation of revenue per treatment" as "indicative of collusion," AC ¶ 105, but then also allege that such information is "a closely guarded secret," *id.* ¶ 315. Plaintiffs cannot have it both ways. *See Twombly*, 550 U.S. at 556.

Cir. 2017); *see also, e.g., In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 763 (7th Cir. 2015) (competitor's dual role as supplier and customer provided "a number of legitimate reasons to communicate"); *Int'l Distrib. Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 795 n.6 (2d Cir. 1987) (hiring a "competitor's employees does not present a compelling case for antitrust intervention"); *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 834–35 (N.D. Ill. 2017); *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d 681, 712 (N.D. Ohio 2025) ("courts consistently reject an inference that attendance at trade events, without more, implies an anticompetitive agreement").

### 3. Government Investigations and Unrelated Settlements Are Not "Plus Factors"

Plaintiffs' attempt to suggest "misconduct" by citing to past or ongoing government investigations, AC ¶¶ 311–13, "is not a plus factor." *See In re Concrete*, 2025 WL 1755193, at *19. Settlements in unrelated matters are even further removed, and cannot support an inference of an agreement to fix prices or allocate markets. *Cf. Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009) (unrelated investigations "do not constitute factual averments of a § 1 claim that would allow such a claim to survive a motion to dismiss").

## III. Plaintiffs' Claim Is Time-Barred

Plaintiffs' claim is barred by the four-year statute of limitations. *See* 15 U.S.C. § 15b. A complaint can be dismissed as time-barred when it provides dates

that "make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (citation omitted).

### A. Plaintiffs' allegations establish that any claim accrued more than four years prior to the filing of the complaint.

Because UFCW 1776 filed its Complaint on May 9, 2025, Plaintiffs' claim is untimely unless it accrued on or after May 9, 2021. Antitrust claims accrue when a defendant commits an act that injures plaintiff. *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apts., LLC*, 843 F.3d 1225, 1247 (10th Cir. 2016). The AC heavily relies on allegations relating to conduct well before May 9, 2021. *E.g.*, AC ¶ 105 (relying on evidence DaVita published "since at least 2010" allegedly "indicative of collusion"); ¶ 125 (relying on evidence "prior to 2011"); ¶ 101 (relying on prices UFCW 1776 paid in 2020); ¶¶ 91–100 (relying on 2012 to 2019 pricing data). Any Section 1 claim thus accrued before May 9, 2021. *See Brown v. JBS USA Food Co.*, 773 F. Supp. 3d 1193, 1231 (D. Colo. 2025) (dismissing § 1 claims as time-barred); *In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275, 1284–85 (D. Kan. 2006) (same).

### B. Plaintiffs fail to sufficiently plead fraudulent concealment.

Plaintiffs' vague and conclusory allegations of fraudulent concealment cannot save their untimely claim. Plaintiffs fail to plead each required element of fraudulent concealment, much less with the specificity required under Rule 9(b). *See Ballen v. Prudential Bache Secs., Inc.*, 23 F.3d 335, 336–37 (10th Cir. 1994) (plaintiff must allege, *inter alia*, the use of fraudulent means and successful concealment from plaintiffs); *Brown*, 773 F. Supp. 3d at 1231 (to satisfy Rule 9(b), plaintiff "must set

forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof" (cleaned up)).

*First*, Plaintiffs' claim that the alleged "price-fixing and market allocation agreement is inherently self-concealing," AC ¶ 314, relies on a standard this Circuit has rejected, *see King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154–55 (10th Cir. 1981)—which it did for good reason: "application of the self-concealing standard in all price-fixing antitrust conspiracy cases would effectively swallow the rule and eviscerate the statute of limitations in such cases." *In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1160 (D. Kan. 2012). Plaintiffs fail to plead, as they must, "some affirmative act of fraudulent concealment frustrated discovery notwithstanding [Plaintiffs'] diligence." *King & King*, 657 F.2d at 1155. Nor does their claim that DaVita "negotiate[s]" private-pay prices with "strict confidentiality provisions," AC ¶ 315, suffice as an affirmative act under Rule 9(b). Plaintiffs allege none of the "who, what, where, when, and how" of the purported concealment. *Brown*, 773 F. Supp. 3d at 1232; *see Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (Rule 9(b) unmet where plaintiffs fail to allege a "sufficiently precise time frame," "place," or "content" of the alleged misrepresentation, or to "identify any specific Defendant who made these alleged fraudulent misrepresentations or omissions"). And the inclusion of a confidentiality provision in an agreement with so-called "trade secrets," AC ¶ 106, cannot possibly be considered "fraudulent," nor do Plaintiffs so allege.

14

*Second*, Plaintiffs fail to allege successful concealment.[7] Although Plaintiffs allege that the prices FMC and DaVita "charge private payers are a closely guarded secret," Plaintiffs also claim to be the "private payers" being charged such "closely guarded" prices. *Id.* ¶ 315. Concealment from the public is not concealment from Plaintiffs. *See Brown*, 773 F. Supp. 3d at 1235 (plaintiffs' allegations that information was "not publicly disclosed" and "closely guarded" only allege it was concealed from the public, not from plaintiffs). In any case, Plaintiffs admit that "[p]rivate payers such as Plaintiffs [are] able to discern what one and sometimes both Defendants charge them." AC ¶ 315. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) ("plaintiff need not know the full extent of his injuries before the statute of limitations begins to run"). Thus, the fraudulent concealment doctrine does not toll the limitations period.

## CONCLUSION

For the foregoing reasons, Plaintiffs have failed plausibly to establish an agreement between FMC and DaVita to set prices and allocate territories for outpatient dialysis services. In any event, Plaintiffs' claim is time-barred. DaVita respectfully requests that the AC be dismissed with prejudice. *See Nat'l Ass'n of Invs. Corp. v. Bivio, Inc.*, 2013 WL 316021, at *8 (D. Colo. Jan. 28, 2013) (dismissing with prejudice because "it would be inequitable to allow Plaintiff a third bite at the apple").

---

[7] Plaintiffs do not allege any facts demonstrating successful concealment of a market allocation agreement. In fact, Plaintiffs allege that they knew by at least 2020 the information relevant to this purported claim. *See* AC ¶¶ 128–29.

DATED: October 10, 2025

By: /s/ *Kathryn A. Reilly*
Kathryn A. Reilly
Michael R. Krantz
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Tel: (303) 244 1800
Fax: (303) 244 1879
reilly@wtotrial.com
krantz@wtotrial.com

Benjamin R. Nagin
Brianna O. Gallo
Kristina A. Gliklad
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 11201
Tel.: (212) 839-5300
Fax: (212) 839 5599
bnagin@sidley.com
bgallo@sidley.com
kgliklad@sidley.com

Jaime L.M. Jones
Scott D. Stein
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853 7000
Fax: (312) 853 7036
jaime.jones@sidley.com
sstein@sidley.com

*Counsel for Defendant DaVita Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I electronically filed the foregoing
Motion to Dismiss Plaintiffs' Amended Class Action Complaint Pursuant to Rule
12(b)(6) with the Clerk of Court using the CM/ECF system which will send
notification of such filing to the following:

Stephen M. Tillery
Michael E. Klenov
Andrew M. Ellis
**KOREIN TILLERY LLC**
stillery@koreintillery.com
mklenov@koreintillery.com
aellis@koreintillery.com

Labeat Rrahmani
**KOREIN TILLERY LLC**
lrrahmani@koreintillery.com

Vincent Briganti
Raymond Girnys
Roland St. Louis
Peter A. Barile III
**LOWEY DANNENBERG, P.C.**
vbriganti@lowey.com
rgirnys@lowey.com
rstlouis@lowey.com
pbarile@lowey.com

Eric L. Young
**YOUNG LAW GROUP, P.C.**
eyoung@young-lawgroup.com